## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **BARBARA BATTLE** | : |
| **parent and next friend of A.M.** | : |
| **4752 Benning Road, S.E., Apt. 2** | : |
| **Washington, D.C. 20019** | : |
| | : |
| **and** | : |
| | : |
| **SHAWN BANKS** | : |
| **parent and next friend of D.B.** | : |
| **82 N. Street SW** | : |
| **Washington, D.C. 20024** | : |
| | : |
| **and** | : |
| | : |
| **MELODIA PHILLIPS** | : |
| **parent and next friend of T.P.** | : Civil Action No: |
| **1333 Queen St., N.E.** | : |
| **Washington, D.C. 20002** | : |
| | : |
| **and** | : |
| **YVONNE STANTON** | : |
| **parent and next friend of K.T.** | : |
| **1234 Southern Ave S.E., Apt 204** | : |
| **Washington, D.C. 20032** | : |
| | : |
| **and** | : |
| **CASSANDRA WHEATEN** | : |
| **parent and next friend of D.W.** | : |
| **1273 Brentwood Road, N.E. #3** | : |
| **Washington, D.C. 20018** | : |
| | : |
| **Plaintiffs** | : |
| | : |
| **v.** | : |
| **DISTRICT OF COLUMBIA** | : |
| **A Municipal Corporation** | : |
| **One Judiciary Square** | : |
| **441 Fourth Street, N. W.** | : |
| **Washington, D.C. 20001** | : |
| | : |
| **to serve:** | : |

```
ADRIAN FENTY, Mayor             :
District of Columbia            :
1350 Pennsylvania Avenue, N. W. :
Suite 316                       :
Washington, D.C. 20004          :
                                :
PETER NICKELS                   :
Attorney General                :
441 4ᵗʰ St.,  N.W.              :
Ste. 1060 N                     :
Washington, D.C. 20001          :
            and                 :
                                :
MICHELLE RHEE (officially)      :
Chancellor, D.C. Public Schools :
825 North Capitol St., N. E., Suite 9026  :
Washington, D.C. 20002          :
                                :
_____Defendants._____ ___:
```

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE AND OTHER RELIEF

Comes now the Plaintiffs, by and through their attorneys Domiento C.R. Hill,  Roxanne D. Neloms, and the Law Offices of James E. Brown & Associates, P.L.L.C, and respectfully unto this Honorable Court as follows that:

### JURISDICTION

1.    This Court has jurisdiction pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C Sections 1400-1461; 29 U.S.C. Sections 794; 28 U.S.C. Section 1331 and 1343 and 5 D.C. Municipal Regs. Sections 3000.1 et seq.

1.    Declaratory relief is authorized by 28 U.S.C Sections 2201; 2202.

2.    Venue is proper in this Court pursuant to 28 U.S.C. Section 1391.

**PARTIES**

3.    Parents Barbara Battle, Shawn Banks, Melodia Phillips, Yvonne Stanton and
Cassandra Wheaton, respectfully initiate this cause of action of behalf of their IDEIA
eligible children, Ashley Major (hereinafter referred to as A.M.), Dionte Banks
(hereinafter referred to as D.B), Terrell Phillips (hereinafter referred to as T.P.), Kevin
Thomas (hereinafter referred to as K.T.), and Darryl Wheaten (hereinafter referred to
as D.W.), respectively.

4.    A.M.'s birth year is 1998 and at all times relevant to the filing of this suit, resided in
the District of Columbia.

5.    D.B.'s birth year is 1999 and at all times relevant to the filing of this suit, resided in the
District of Columbia.

6.    T.P's birth year is 2001 and at all times relevant to the filing of this suit, resided in the
District of Columbia.

7.    K.T.'s birth year is 1992 and all times relevant to the filing of this suit, resided in the
District of Columbia.

8.    D.W.'s birth year is 1991 and at all times relevant to the filing of this suit, resided in
the District of Columbia.

9.    Defendant, the District of Columbia Government is a municipal corporation that

receives federal funds pursuant to the Individuals with Disabilities Act ("IDEA"), to
ensure access to a free and appropriate education ("FAPE") and is obligated to comply
with the applicable federal regulations and statutes including but not limited to the
IDEA.

10.    Defendant, Michelle Rhee, being sued in her capacity as the Chancellor of the District
of Columbia Public School System ("DCPS") which is the State Educational Agency
("SEA"), charged with responsibility of ensuring that all disabled children in the
District of Columbia receive access to a free and appropriate public education "FAPE"
and to ensure them equal protection and due process of law.

## RELEVANT BACKGROUND

### A. Factual Background of A.M.

11.    A.M.'s most recent Individualized Education Plan ("IEP"), dated February 21, 2008,
classifies her with Multiple Disabilities ("MD"), a student with both an Emotional
Disturbance ("ED") and ADHD.  She is entitled to 18.75 hours a week of specialized
instruction, and 1 hour a week of counseling services.  See Complaint Ex. 8

12.    On May 29, 2008, DCPS convened an MDT meeting with A.M.'s grandmother and
educational advocate.  During that meeting, the DCPS-members of the team informed
the grandmother and advocate that DCPS has not been providing A.M. with counseling
since the development of the current IEP.  See Complaint Ex. 3.

13.    Based on DCPS' failure to provide counseling in accordance with A.M.'s IEP, the
parent, through counsel, filed an administrative due process hearing request on June 7,

2008 seeking compensatory education for the time that DCPS denied A.M. access to a free and appropriate education. See Complaint Ex. 2.

14. Hearing Officer Frederick Woods, in a July 13, 2008 Hearing Officer's Determination, denied the parent's claim and then dismissed it with prejudice, stating that even though DCPS had not provided A.M. with eight hours of counseling as identified by her IEP, she has received counseling from First Home Care after school for the past two years. See Complaint Ex. 1.

### B. Factual Background of D.B.

15. D.B. attended Anthony Bowen ES as a student classified with multiple disabilities, more specifically as Mentally Retarded ("MR") and Other Health Impaired ("OHI"). See Complaint Exhibit 13.

16. D.B.'s mother requested that D.B. receive an AlphaSmart and an Adaptive Technology Assessment to determine what educational software would assist D.B. in accessing the curriculum. *Id.*

17. DCPS refusal was based on the Occupational Therapists position that "we want him to work on his writing and coordination". *Id.*

18. In addition, it became apparent that D.B. had not received all of the related services he was entitled to, most notably, 15 hours total of Physical Therapy Services from February 2006 to February 2008, 9 hour total of Counseling Services from February 2006 to February 2008 and 56 hours and forty five minute in Occupational Therapy Services. See Complaint Ex. 14.

19. So on April 17, 2008, the parent, through counsel filed an administrative due process

hearing request alleging, among other things, that DCPS denied the student access to FAPE by failing to re-evaluate the student as requested and further failing to implement the IEP. See Complaint Ex. 12.

20. The June 2008 Hearings Officers Determination denied the student compensatory education on the basis that the parent failed to satisfy the requirements for compensatory education because she failed "to offer persuasive evidence on how the student would have progressed had all the services been provided and by failing to show the type and amount of compensatory education services that would have brought the student to the projected level". See Complaint Ex. 11.

### C. Factual Background for T.P.

21. T.P. is a student with disabilities under the IDEIA and was eventually found eligible under Other Health Impairment on March 10, 2008, despite having information regarding the nature of the student's disability for several years. See Complaint Ex. 16.

22. On April 4, 2004, TP, after a week of appearing lethargic and walking with an uneven gait, was admitted to the Children's National Medical Center ("CNM"), his condition worsened and he eventually slipped into a coma. Soon after TP was diagnosed with viral encephalitis (rhomboencephalitis) from HHV-6 virus, and with Juvenile Rheumatology Arthritis. See Complaint Ex. 17.

23. On August 17, 2004, Ms. Phillips appeared at DCPS' C.A.R.E. Center to participate in a Teacher Assistant Team Meeting ("TAT Meeting") to completed the necessary paperwork in order to effectuate the student's enrollment within the District of

Columbia and to begin the special education eligibility process for the student. See Complaint Ex. 18.

24.   At that meeting, Ms. Phillips submitted copies of T.P.'s discharge summary from HSC, psychological evaluation, an occupational therapy discharge summary, a speech and hearing discharge summary, a recreation therapy discharge summary, and a educational discharge summary. See Complaint Ex. 19, 20, 21, 22, and 23.

25.   After reviewing the reports provided by the parent, Dr. Crystal Taylor-Davis, a DCPS School Placement Physician, determined that TP should receive special education and related services as a student with other health impairment. See Complaint Ex. 24.

26.   On September 29, 2004, a second set of the evaluations, reports, and recommendations from Dr. Taylor-Davis were forwarded to a case specialist on T.P.'s case. In addition, the parent's counsel, sought additional evaluations. See Complaint Ex. 25.

27.   DCPS did not respond to this request and as a result, parent's counsel filed an administrative due process hearing request on December 27, 2004.

28.   On February 1, 2005, parent's counsel and DCPS' counsel entered into a settlement agreement whereby DCPS agreed to do, convene the student's MDT within 30 school days, to review his evaluations, determine TP's eligibility for special education and its related services, and if eligible develop an appropriate IEP. See Complaint Ex. 26.

29.   On March 2, 2005, parent's counsel, notified the Office of Mediation and Compliance, of DCPS' failure to comply with the express written terms of the February 1, 2005 settlement agreement. See Complaint Ex. 27.

30.   Because DCPS failed to respond, parent's counsel filed a second administrative due process hearing request on March 18, 2005. See Complaint Ex. 28.

31.   Subsequent to the filing of the administrative due process hearing request, a BLMDT/IEP Meeting was scheduled with representatives from DCPS to occur on March 30, 2005 at the Joseph P. Kennedy Institute. Members of the MDT determined that TP was eligible to receive special education and its related services as a student with Other Health Impairment, and recommended placement at the Ivymount School or the Katherine Thomas School. However, because no DCPS representative appeared at the MDT/IEP Meeting, no decision regarding placement could be made. See Complaint Ex. 29.

32.   In the interim, the Katherine Thomas School accepted TP for the 2005-2006 school year, and in lieu of a hearing, the parties entered into a second settlement agreement whereby DCPS agreed, among other things, to convene TP's "MDT/IEP meeting on or about April 25, 2205, to review the student's current evaluations, determine which additional evaluations are necessary, draft an IEP and schedule a meeting to reconvene for the IEP and discuss placement". See Complaint Ex. 30, 31, and 32.

33.   Notwithstanding, DCPS' failure to develop an IEP for TP at the April Meeting, parent's counsel provided Ms. Gloria Everett with copies of the additional evaluations and medical reports and requested that DCPS review the reports and evaluations and send copies of written reviews upon completion. DCPS never responded to the request. See Complaint Ex. 33.

34.     A second MDT/IEP Meeting was convened in May 2005, Ms. Everett, for a second time, stated that the IEP would not be developed because DCPS did not have copies of TP's occupational therapy and physical therapy evaluations. See Complaint Ex. 34.

35.     Once again, parent's counsel, in July 2005, notified DCPS' Office of Mediation and Compliance of DCPS' failure to comply with the terms of the April 21, 2005 settlement agreement. See Complaint Ex. 35.

36.     On July 8, 2005, parent's counsel filed another administrative due process hearing complaint and so on July 27, 2005, DCPS sent to the parent's counsel, a letter of invitation to convene the student's MDT. See Complaint Ex. 36.

37.     At the third consecutive MDT meeting held in August 2005, Ms. Everett informed the parent and her educational advocate that DCPS required updated speech/language and physical therapy evaluations/reports from HSC prior to making a decision an eligibility for special education and related services.

38.     Despite the language incorporated into the settlement agreement, Ms. Everett informed the parent and her representative that DCPS was not inclined to develop an IEP for TP because students, under the IDEIA, are not entitled to receive special education and its related services under the handicapping condition of OHI. Notwithstanding parent's counsel transmitted the additional evaluations to Ms. Everett, on August 17, 2005. See Complaint Ex. 37.

39.     As a result of the administrative due process hearing request filed, the parties participated in a resolution session conference, and again provided Ms. Everett with copies of TP's occupational therapy and physical therapy evaluations.

40. While the resolution session conference was unsuccessful, TP's administrative due process hearing was rescheduled from September 13, 2005, to September 30, 2005.

41. At the fourth MDT meeting, held on September 22, 2005, Ms. Everett again refused to develop TP's IEP, or to discuss placement as TP was not, in her opinion, eligible to receive special education and its related services because a classification of Other Health Impairment does not entitle a student to receive special education. See Complaint Ex. 38.

42. She then again circumvented the meeting by stating that Dr. Taylor Davis had to review the evaluations and determine issue of the student's eligibility for special education and its related services, and so no IEP was developed.

43. Between September 30, 2005 and December 22, 2005, the T.P's hearing was continued a total of three times.

44. As a result, parent's counsel filed a Preliminary Injunction in the U.S. District Court for the District of Columbia and as a result, Special Master Elsie Baach placed T.P. at the Katherine Thomas School following the Christmas Break, beginning in January 2006. See Complaint Ex. 39.

45. In retaliation, DCPS filed a complaint against the parent, alleging that the student was not eligible to receive special education services and seeking a finding that terminated T.P.'s funding at Katherine Thomas. See Complaint Ex. 40.

46. On March 30, 2006, an MDT convened at the Katherine Thomas School, and again no representative from the LEA appeared. In the interim, T.P.'s evaluations all expired, so parent's counsel requested new evaluations. See Complaint Ex. 41 and 42.

47.   DCPS never responded to the request, and so on August 25, 2006, another administrative due process complaint was filed seeking reevaluations. See Complaint Ex. 43.

48.   A hearing officer jointly heard the administrative due process complaint filed DCPS by on administrative due process complaint filed by the parent on November 22, 2006 and both complaints were dismissed on December 1, 2006. See Complaint Ex. 44.

49.   The parent again sought evaluations on behalf of T.P. on March 29, 2007, and followed up on July 18, 2007, seeking the status of the requested evaluations. See Complaint Ex. 45 and 46.

50.   Once again receiving no response, parent's counsel, on July 31, 2007 filed an administrative due process complaint alleging that DCPS failed to timely evaluate and determine the student's eligibility for special education and related services. See Complaint Ex. 47.

51.   On October 3, 2007, DCPS entered into a Settlement Agreement with the parent, agreeing to conduct a psycho-educational, speech and language, occupational therapy, and physical therapy evaluation by November 17, 2007 or DCPS would fund the evaluations independently. See Complaint Ex. 48.

52.   DCPS completed a psychological evaluation on November 19, 2007, a speech and language evaluation on November 15, 2007, an occupational therapy evaluation on November 14, 2007, and a physical therapy evaluation on January 18, 2008. See Complaint Ex. 49, 50, 51, and 52.

53.    DCPS convened an MDT meeting on March 10, 2008 to review the student's evaluations, determine eligibility, and finally developed T.P.'s IEP. See Complaint Ex. 53.

54.    The team determined that the student requires a full time special education placement, 27.5 hours of specialized instruction, 1.5 hours of physical therapy, 1.5 hours of occupational therapy, 1 hour of speech therapy, and 1 hour of psychological/social emotional therapy weekly. The team agreed to maintain the student's placement at the Katherine Thomas School. Id.

55.    The parent, through her educational advocate, requested compensatory education for the period of time that T.P. should have been receiving services, until the time he was placed at the Katherine Thomas School. This period of time was calculated from September 19, 2004, the date on which DCPS should have first determine eligibility and developed his IEP until January 2006, the date at which Special Master Baach ordered placement at his current school.

56.    DCPS disagreed and denied the parent's request, so on February 11, 2008, the parent through counsel, filed yet again another administrative due process hearing request seeking compensatory education for the time DCPS denied T.P. access to a free and appropriate education. See Complaint Ex. 54.

57.    The administrative due process hearing convened on April 11, 2008, April 25, 2008, and May 14, 2008 and included the testimony of seven witness of behalf of the parent and one witness on behalf of the DCPS. See Complaint Ex. 55.

58.   At the hearing of April 25, 2008, Hearing Officer Terry Banks stated, after hearing the parent's opening statements and reviewing T.P.'s educational records, that DCPS denied T.P. a FAPE.

59.   In a May 23, 2008 Hearing Officer's Determination, Hearing Officer Terry Banks dismissed the matter with prejudice stating that the parent failed to meet her burden of proving that the March 10, 2008 IEP developed on T.P.'s behalf was inadequate to demonstrate the student's right to receive compensatory education services.

### D. Factual Background for K.T.

60.   K.T.'s current disability is learning disabled and his IEP contained 20 hours of specialized instruction and 30 minutes of counseling weekly. See Complaint Ex. 62.

61.   The parent transferred her son to Ballou Senior High School during October 2007 and provided the school with a copy of K.T.'s IEP.

62.   DCPS convened several MDT meetings without the parent's participation; with the first meeting taking place on January 24, 2008 and the second MDT taking place on February 13, 2008.

63.   The February 13, 2008 MDT meeting included only three members: a special education teacher (Mr. Ogunwane), a general education teacher (Mr. Reynolds O), and the special education coordinator/LEA representative (Mr. Young).

64.   The IEP developed on February 13, 2008 included only 7 hours of special education services, despite the fact that the parent provided DCPS with his 2006 IEP that called for 20 hours of specialized instruction and 30 minutes of counseling weekly.

See Complaint Ex. 62.

65.   DCPS convened another MDT, per the parent's confirmation, on February 15, 2008.
      DCPS failed to mention that they had convened a meeting just 2 days prior where
      K.T.'s IEP was amended. See Complaint Ex. 63.

66.   The teachers also stated they were unaware that K.T. had an IEP and that it had
      never been implemented.

67.   Based on these violations the parent filed two administrative due process hearing
      requests on February 28, 2008 and March 17, 2008.  See Complaint Ex. 57 and 58.

68.   The administrative hearing was held on April 7, 2008 and via hearing officer's
      determination issued on April 17, 2008, the hearing officer determined that the
      parent failed to prove its case for compensatory education services.  See Complaint
      Ex. 56.

69.   Parent's counsel filed a motion for reconsideration and the hearing officer failed to
      respond to the motion. See Complaint Ex. 59.

                           *E. Factual Background for D.W.*

70.   D.W. attends the Accotink Academy and is identified as learning disabled.  See
      Complaint Exhibit 66.

71.   Prior to attending Accotink, D.W. attended Dunbar Senior High School located in the
      District of Columbia. Dunbar Senior High School is a regular education program. See
      Complaint Ex. 67.

72.   D.W.'s Individualized Educational Program (IEP) contains twenty-nine (29) hours of
      specialized instruction a week and one (1) hour of individualized speech and language

                              Page 14 of 19

services. *Id.*

73.    On February 26, 2007, the MDT Team reconvened and determined that the student required placement in a full-time [special education setting] out of the general education as the entire MDT Team agreed that the student's then placement, Dunbar Senior High School could not meet the student's educational needs which included vocational training. See Complaint Ex. 71.

74.    The MDT Team expressed their concern that the open space setting at Dunbar Senior High School, coupled with the student's ADHD and the distractability this type of setting offered to the student would continue to hamper his academic growth and would further exacerbate the minimal academic progression he has demonstrated. *Id.*

75.    Specifically, the MDT Team indicated, according to the MDT Meeting notes, that D.W. made little to no progress since 1999 and the likelihood of academic progress, if he remains at Dunbar Senior High School, is minimal.

76.    Despite the mountain of information, DCPS was unable to provide D.W. an appropriate special education program.

77.    A subsequent MDT/IEP meeting convened for D.W., on September 12, 2007, and the entire MDT Team, for a second time, agreed that D.W.'s current placement was not appropriate and that a full-time, separate, special education day program was necessary.

78.    Additionally, at this meeting the parent sought compensatory education as a result of DCPS' inability to provide D.W. with access to a FAPE, however the parent agreed to revisit the issue of compensatory education until a later date and time. See Complaint Ex. 69.

79.    On November 16, 2007, a settlement agreement was reached between the parent and DCPS in which DCPS agreed to fund D.W.'s placement, with transportation services, at the Accotink Academy.

80.    At the third MDT meeting scheduled for D.W, the parent and her educational advocate requested compensatory education services for D.W. for the denial of a FAPE that accrued while D.W. was at Dunbar Senior High School and unable to receive his necessary services until the time D.W. was appropriately placed. See Complaint Ex. 63.

81.    The parent and her educational advocate requested 220 hours of compensatory education services. The DCPS placement specialist/monitor stated that she would refer to the previous [DCPS] team to discuss D.W.'s right to receive compensatory education services and she would further get the records from D.W.'s previous school at Dunbar Senior High School and an educational assessment. Additionally, DCPS requested that the parent, through her educational advocate, submit in writing, the basis for the parent's request for compensatory education, and a proposed plan.

82.    On February 20, 2008, the parent, through her educational advocate, wrote to DCPS providing her written documentation to support the parent's request for compensatory education services. See Complaint Ex. 64.

83.    DCPS never responded to the parent's request so on April 21, 2008, the parent filed another administrative due process hearing request seeking compensatory education services for DCPS failure to provide access to a free and appropriate education during the 2007-2008 school year. See Complaint Ex. 65.

84.    In a June 10, 2008 Hearing Officer's Determination, Hearing Officer Frederick Woods issued a hearing officer's determination dismissing the administrative due process hearing request with prejudice claiming that the parent had not meet her burden in accordance with the *Reid* standard and found that DCPS had denied D.W. access to FAPE but they had "remediated" that denial by placing the child in Accotink. See Complaint Exhibit 64.

## PLAINTIFFS' FIRST CLAIM FOR RELIEF

### EACH PLAINTIFF DEMONSTRATED THAT DCPS DENIED THEM ACCESS TO FAPE AND AS A MATTER OF LAW, EACH IS ENTITLED TO COMPENSATORY EDUCATION.

85.    The parents re-allege and incorporate by reference paragraphs 1-84.

86.    Courts have defined compensatory education awards as equitable remedies which are meant to redress the harm cause by denials of access to a free and appropriate education. Thus an award of compensatory education is to provide a child with services above and beyond what he/she would have normally received. *See Reid v. District of Columbia*

87.    "Under the theory of 'compensatory education' hearing officers may award 'educational services. . . to be provided prospectively to compensate for a past deficient program." See *Reid v. District of Columbia* (quoting *G. Ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 308 (4th Cir. 2003). "More specifically, as the Fourth Circuit has explained, "[c]ompensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed as educational deficit created by an educational agency's failure over a given period of time to provide

a [free and appropriate education] to a student. *See Reid v. District of Columbia*,

88.     In each of the case presently before the Court, the plaintiffs set forth evidence to support the compensatory educational plans to compensate for educational deficits created by the District of Columbia Public Schools.

89.     In each the matters, the hearing officers acknowledged that each student had been denied access to a free and appropriate education and then determined that compensatory education was not warranted.

90.     Despite the testimony and documentation supporting awards of compensatory education, in each of decision the hearing officers did not engage in a fact specific inquiry which would have allowed each them to appropriately award each student compensatory education that would have been "reasonably calculated" to provide educational benefit.

## PLAINTIFFS' SECOND CLAIM FOR RELIEF

### DESPITE WELL-ESTABLISHED PRECEDENTS, EACH OF THE HEARING OFFICERS DETERMINATIONS' FAILED TO APPLY THE REID STANDARD IN AWARDING COMPENSATORY EDUCATION

91.     The parents re-allege and incorporate by reference paragraphs 1-90.

92.     Each of the plaintiffs were denied access to a free and appropriate education based on DCPS' failure to comply with specific provisions of IDIEA.

93.     The Court noted, that to the determine the amount of remedial assistance appropriate for a child, requires an undertaking of fact specific exercises of discretion, by either the district court or a hearing officer. See Reid .   The Court noted that these *types of inquires (exercises of discretions)*. "must be *fact-specific* [omit] to accomplish IDEA's

Page 18 of 19

purposes, [because] the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id.*

94.   In each of the case presently before the Court, the hearing officers failed to engage in a fact-specific inquiry to determine the appropriate amount of compensatory education that might be due.

95.   None of the hearing officer determinations contained well reasoned analysis that would have adequately informed the plaintiffs as to why each of them were not entitled to compensatory education.

**Wherefore**, the plaintiffs pray that this Court:

1. Reverse each of the hearing officers determinations which denied each plaintiff with compensatory education services;

2. Order that DCPS fund each of the plaintiffs' proposed compensatory education plans;

3. Award plaintiff's attorney fees and costs of this action;

4. Award any other relief that the Court deems just and proper.

Respectfully submitted,

Roxanne D. Neloms  No. 478157
Domiento C.R. Hill No. MD 14793
James E. Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
(202)742-2000 (Tele.)
*Counsel for Plaintiffs*

C 08-1449 JR

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

BARBARA BATTLE, et al.

1104

## DEFENDANTS

DISTRICT OF COLUMBIA, et al

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Roxanne D. Neloms, Esq.
Domiento C.R. Hill, Esq.
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
(202) 742-2000

Case: 1:08-cv-01449
Assigned To : Robertson, James
Assign. Date : 8/20/2008
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- ○ A. *Antitrust*
  - ☐ 410 Antitrust

- ○ B. *Personal Injury/ Malpractice*
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ⊙ C. *Administrative Agency Review*
  - ☐ 151 Medicare Act

  Social Security:
  - ☐ 861 HIA ((1395ff)
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g)

  Other Statutes
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☐ 893 Environmental Matters
  - ☒ 894 Energy Allocation Act
  - ⊗ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ D. *Temporary Restraining Order/Preliminary Injunction*

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

- ○ E. *General Civil (Other)*    OR    ○ F. *Pro Se General Civil*

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

3

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
20 USC 1400-1491 as amended Federal Question review of agency decision involving rights to Free Appropriate Public Education

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☑   If yes, please complete related case form.

DATE 8/20/08   SIGNATURE OF ATTORNEY OF RECORD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

**BARBARA BATTLE, et al.**

Plaintiff(s),

vs.                                          **Civil Action No.  08-1449** (JR)

**DISTRICT OF COLUMBIA**

Defendant(s).

## <u>NOTICE REGARDING BULKY EXHIBITS</u>

Pursuant to the procedures for filing bulky pleadings, bulky exhibits have been filed in paper in this case.  The exhibits are available at the Clerk's Office for public viewing  and copying between the  hours of 9:00 a.m. and  4:00 p.m., Monday through Friday.

**NANCY MAYER-WHITTINGTON**

Clerk